JUSTIN H. WILKES
1727½ Webster Avenue
Los Angeles, CA 90026
Telephone: (360) 362-8172
Email: justicewithjustin@gmail.com

Self-Represented

no cv-30



LODGED
CLERK, U.S. DISTRICT COURT

AUG 16 2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____KMH_____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

AUG 16 2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____KMH_____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN H. WILKES,<br><br>        Plaintiff,<br><br>v.<br><br>KELI NETWORK INC.,<br><br>        Defendant. | Case No.: 2:21-cv-06620-DOC-PLAx<br><br>**COMPLAINT FOR DAMAGES**<br><br>(1) RACE DISCRIMINATION<br><br>**JURY TRIAL DEMANDED** |

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000e-5(f)(3) because each United States district court subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this title. Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 because this civil action arises under the laws of the United States.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the events giving rise to this claim occurred in this district and because Plaintiff would have worked in this district

COMPLAINT FOR DAMAGES - 1

but for the alleged unlawful employment practice by Defendant.

## INTRODUCTION

3. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, which prohibits employment discrimination based on race. This action alleges that Defendant discriminated against Plaintiff because of Plaintiff's race as Black or African American. Plaintiff seeks damages in an amount sufficient to compensate Plaintiff for Plaintiff's loss resulting from Defendant's conduct. Plaintiff hereby requests a jury trial on this matter.

## PARTIES

4. Plaintiff JUSTIN H. WILKES is an individual and resident of Los Angeles County, California.

5. Defendant KELI NETWORK INC. is a Delaware domestic corporation, with its principal place of business at 234 5th Avenue, New York, NY 10001.

## STATEMENT OF FACTS

**I.  Defendant Discriminated Against Plaintiff in Violation of Title VII of the Civil Rights Act of 1964**

6. This is an action for damages based upon Defendant's practice of employment discrimination against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

7. Plaintiff is Black or African American.

8. On September 16, 2020, Plaintiff applied for a legal position with Defendant. Defendant sought applicants to fill a Legal Affairs position in Los Angeles, CA.

9. Defendant intentionally discriminated against Plaintiff as an applicant for this role. As a result, Plaintiff suffered severe mental and emotional distress.

10. On September 16, 2020, Plaintiff reached out to Defendant on LinkedIn regarding the Legal Affairs position.

11. Defendant's Vice President of Legal replied.

12. Defendant's Vice President of Legal provided an in-depth explanation regarding the role.  Defendant's Vice President of Legal explained that the position was a combined business and legal affairs role that supported Defendant's social media Creators Program. The position would have significant responsibility. The position focused heavily on negotiating and drafting contracts. Defendant's Vice President of Legal further described the position as a dynamic. Defendant's Vice President of Legal remarked that the

COMPLAINT FOR DAMAGES - 3

position rests on the cutting edge of the social media space within a key company segment. Defendant's Vice President of Legal noted a preference to onboard a candidate relatively soon. Defendant's Vice President of Legal highlighted a key requirement for potential candidates to possess a current CA Registered In-House Counsel license or admission to the California Bar to be considered. Defendant's Vice President of Legal then encouraged Plaintiff to submit an application to Defendant's Talent Acquisition Specialist Hanna Simonson for next steps.

13.    Defendant's response gave Plaintiff the impression that Plaintiff would likely be hired for the position.

14.    Plaintiff replied the same day. Plaintiff assured Defendant's Vice President of Legal that Plaintiff met the licensing requirement for the Legal Affairs position. Plaintiff also expressed an interest in formally submitting an application to Ms. Simonson to start the process.

15.    Defendant's Vice President of Legal then replied. Defendant's Vice President of Legal remarked "Thanks, Justin! I'm glad you're going to apply with Hannah. Have a great rest of your week!"

16.    Excited by Defendant's Vice President of Legal response, Plaintiff applied.

17.    On September 17, 2020, the following day, Defendant's Talent Acquisition Specialist Hanna Simonson reached out to Plaintiff by email. Ms. Simonson scheduled an interview with Plaintiff on September 18, 2020.

18. Plaintiff thought Defendants fast turnaround was a good sign.

19. On September 18, 2020, Ms. Simonson interviewed Plaintiff for the Legal Affairs position. Ms. Simonson shared numerous insights with Plaintiff. Ms. Simonson noted Defendant's recent growth. Ms. Simonson explained that the Legal Affairs role would support Defendant's Creator Program. Ms. Simonson noted the salary for the position.

20. Ms. Simonson then provided Plaintiff with an interview schedule. Ms. Simonson thereafter tentatively scheduled a follow-up interview with Defendant's Head of Creator Partnerships Jeff Olson. Ms. Simonson also shared that Plaintiff would interview with Defendant's Vice President of Legal to follow.

21. Following their interview, Plaintiff felt that Ms. Simonson gave the impression that Plaintiff would be hired on for the Legal Counsel position.

22. On September 21, 2020, Ms. Simonson followed up. Ms. Simonson scheduled Plaintiff's interview with Mr. Olson on September 22, 2020, the following day. However, at that time, Ms. Simonson shared a significant change to the interview process. Plaintiff was stunned.

23. Defendant, at a moment's notice, scheduled an interview for Plaintiff to speak with Defendant's Vice President of Legal instead of Mr. Olson. Plaintiff felt unprepared. Plaintiff's performance suffered as a result.

24. On September 23, 2020, Defendant's Vice President of Legal interviewed Plaintiff. Plaintiff was impressed with Defendant's Vice President

COMPLAINT FOR DAMAGES - 5

of Legal's conversation. Defendant's Vice President of Legal spoke about the Legal Affairs position in great detail. For example, Defendant's Vice President of Legal continued their conversation from September 16, 2020 regarding Defendant's Creator Program. Defendant's Vice President of Legal explained that the program had been in existence for over one year. Defendant's Vice President of Legal noted that 70 individual creators were currently a part of the program. Defendant's Vice President of Legal noted that Plaintiff, in this role, would independently handle legal matters related to the Creator Program. Defendant's Vice President of Legal noted that Plaintiff would provide production legal support on related issues.

25. During their conversation, Defendant's Vice President of Legal asked Plaintiff questions that put Plaintiff at a disadvantage. Plaintiff felt uneasy.

26. Interestingly however, Defendant's Vice President of Legal then tentatively set a follow-up interview with Mr. Olson.

27. Following the interview, Ms. Simonson reached out. Ms. Simonson rescheduled a follow-up interview with Mr. Olson.

28. On September 28, 2020, Mr. Olson interviewed Plaintiff. Mr. Olson asked questions that set Plaintiff up to fail. Plaintiff was perplexed.

29. Much later, on October 6, 2020, Plaintiff reached out to Defendant. Plaintiff inquired about the status of the Legal Affairs position.

30. On October 7, 2020, after a delay, Defendant replied. Ms. Simonson shared that Defendant would have a response the following week.

31. On October 14, 2020, Defendant rejected Plaintiff for the Legal Affairs position. In addition, Plaintiff was caused to forfeit a viable job opportunity in legal with Disney's National Geographic in Los Angeles, CA in reliance on Defendant's assurances between September until October 2020.

II. **The United States Equal Employment Opportunity Commission's Los Angeles District Office Discriminated Against Plaintiff After Rejection**

32. Following Plaintiff's rejection, the Los Angeles District Office of the Equal Employment Opportunity Commission ("EEOC") sought to deprive Plaintiff of due process.

33. On May 3, 2021, on one occasion, the EEOC prevented Plaintiff from scheduling an intake interview. This occurred after Plaintiff filed a charge of discrimination against Defendant.

34. The EEOC then, on numerous occasions, harassed Plaintiff with reminder emails. On May 7, 2021 and May 8, 2021, the EEOC sent Plaintiff reminders explaining that an intake interview was required to complete the filing process.

35. Following the harassing emails, Los Angeles District Office's Intake Supervisor Garrett Hoover reached out to Plaintiff numerous times. Plaintiff had originally reached out to Mr. Hoover on May 3, 2021 to separately file a charge against Defendant by email. Each time Mr. Hoover reached out, Mr. Hoover shared updates that imparted additional delays.

36. On May 10, 2021, on another occasion, the EEOC sent Plaintiff an

automatic email. The email explained that closure documents would be issued through the EEOC Public Portal not by mail. Plaintiff received a similar reminder from Mr. Hoover on May 27, 2021. On June 10, 2021 however, Plaintiff received an envelope from the Los Angeles District Office with a Notice of Right to Sue included. The envelope separately had enclosed a cover page titled Closure Document. Plaintiff noticed that the Closure Document was issued nearly a month after the Notice of Right to Sue. The Closure Document issued on June 3, 2021. The Notice of Right to sue issued on May 12, 2021. Plaintiff found this to be very unusual.

37.     On May 12, 2021, Plaintiff received a harassing email reminder from the EEOC. The EEOC explained that a decision had been made regarding Plaintiff's charge. The EEOC encouraged Plaintiff to download and retain a copy of documents added to the EEOC Public Portal. Plaintiff visited the EEOC Public Portal to view the documents described. However, no documents were available.

38.     On May 19, 2021, Plaintiff received another email reminder. Similar to the email that Plaintiff received on May 12, 2021, the EEOC explained that a decision had been made regarding Plaintiff's charge. The EEOC encouraged Plaintiff to download and retain a copy of documents added to the EEOC Public Portal. Plaintiff visited the EEOC Public Portal to view the documents described. However, no documents were available.

# CAUSE OF ACTION

**(For Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964 by Plaintiff Justin H. Wilkes against Defendant Keli Network Inc.)**

39. Plaintiff repeats and realleges the foregoing allegations with the same force and effect as if fully set forth herein.

40. Plaintiff believes and alleges that race was a motivating factor in Defendant's decision not to hire Plaintiff on October 14, 2020.

41. Defendant discriminated against Plaintiff as an applicant for the Legal Affairs position. The Los Angeles District Office discriminated against Plaintiff to follow.

42. Defendant's conduct as alleged constitutes an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

43. Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race. Section 703(a)(1), as codified in 42 U.S.C. § 2000e-2(a)(1) of the United States Code, provides that it is unlawful for an employer:

> "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin…"

Provided in section 703(a)(2), as codified in 2000e-2(a)(2) of the United States Code, it is impermissible for an employer:

> "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin."

As previously described in section 703(a)(1), section 703(m) further emphasizes that:

> "Except as otherwise provided in this title, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."

44. In <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424, 429 (1971), the United States Supreme Court explained that:

> "the language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens."

45. <u>Griggs</u> held that:

> "What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." <u>Id.</u> at 431.

46. The United States Supreme Court, in <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981), defined the burden of proof under Title VII of the Civil Rights Act of 1964. <u>Id.</u> at 248. To establish a prima facie case of disparate treatment, <u>Burdine</u> provided that a:

> "[] plaintiff must prove by the preponderance of the evidence that [he] applied for an available position for which [he] was qualified, [however] was rejected under circumstances which give rise to an inference of unlawful discrimination." <u>Id.</u> at 253.

47. In this case, Defendant's decision not to hire Plaintiff for the Legal Affairs position violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

48. As proscribed in section 703(a)(1), Defendant engaged in an unlawful employment practice when Defendant refused to hire Plaintiff for the Legal Affairs position on October 14, 2020 because of Plaintiff's race as Black or African American. Plaintiff's claim for discrimination arose at that point.

49. Defendant impermissibly limited, segregated and classified Plaintiff as an applicant because of Plaintiff's race. Defendant's conduct deprived Plaintiff of the Legal Affairs opportunity.

50. Race was a motivating factor for Defendant's employment practices against Plaintiff, as described in section 703(m).

51. Similar to <u>Griggs</u>, Defendant fostered a racially stratified job environment to Plaintiff's disadvantage. Defendant created disturbances on several occasions in Plaintiff's hiring process. Defendant failed to assure equal employment opportunity in these instances. As a result, Defendant also failed to eliminate discriminatory practices likely motivated by the pandemic and the political climate of today.

52. Defendant sought to create artificial, arbitrary, and unnecessary barriers that prevented Plaintiff, as a member of a racial minority, from being selected for the Legal Affairs position. The barriers imposed by Defendant, on numerous occasions, operated to invidiously discriminate based on Plaintiff's race and, as a result, disproportionately impacted communities of color.

53. Plaintiff has suffered and will continue to suffer substantial losses in earnings and job benefits. Plaintiff has suffered and will continue to suffer mental and emotional distress, pain and suffering, all to Plaintiff's damage in an amount to be proven at trial. Plaintiff was rendered sick, sore and disabled, both internally and externally, and has suffered numerous internal injuries, such as severe fright, shock, pain and discomfort. The exact nature and extent of said injuries are not known to Plaintiff, who will request leave of court to insert the same when ascertained. Plaintiff does not at this time know the exact permanence of said injuries, but is informed and believes, and thereon alleges, that some of Plaintiff's injuries are reasonably certain to be permanent in character.

54. Defendant intentionally engaged in the unlawful employment practice described against Plaintiff. Plaintiff, therefore, is entitled to an award of punitive damages against Defendant.

55. Plaintiff has suffered damages and seeks all remedies available at law and in equity in an amount to be proven at trial.

# REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1. For affirmative action as may be appropriate.

2. For each offense in an amount that may be determined by a jury.

3. For a permanent injunction or other order to ensure full and fair consideration from Defendant if Plaintiff seeks similar employment in the future.

4. For compensatory damages, including back pay, lost wages and benefits, emotional and mental distress, medical and related expenses, and other pecuniary loss not presently ascertained according to proof in an amount to be determined at trial.

5. For punitive damages.

6. For prejudgment interest on all amounts claimed.

7. For any other equitable relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of all issues so triable.

Respectfully submitted,

DATED: August 12, 2021      JUSTIN H. WILKES

By: *(signature)*

JUSTIN H. WILKES



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Los Angeles District Office**

255 E. Temple Street, 4th Floor
Los Angeles, CA 90012
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Los Angeles Direct Dial: (213) 785-3090
FAX (213) 894-1118
Website: www.eeoc.gov

## CLOSURE DOCUMENT ENCLOSED

RE:    EEOC Charge No.:    480-2021-02319C
       Charging Party:      Wilkes, Justin H.
       Respondent:         JELLYSMACK

Justin Wilkes
18546 Kerill Road
Triangle, VA 22172

Dear Mr. Wilkes:

The United States Equal Employment Opportunity Commission (EEOC) issued the enclosed document in the above-referenced charge on the date reflected thereon. Specifically, on that date, EEOC sent you an email notification that EEOC had made a decision regarding the above-referenced charge and advised you to download a copy of the decision document from the Portal. Our records indicate you have not downloaded that document from the portal. For your convenience, a copy of that document is enclosed with this letter.

I hope this information is helpful. If you have questions, please contact Patricia Kane Enforcement Manager by telephone at (213) 785-3021 or email at LOSAGOV@eeoc.gov.

Sincerely,

**Jorge Sosa**    For
Digitally signed by Jorge Sosa
Date: 2021.06.03 13:30:59 -07'00'

Rosa M. Viramontes, District Director
Los Angeles District Office

June 3, 2021
Date Mailed

Enclosure

EEOC Form 161-B (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**NOTICE OF RIGHT TO SUE** *(ISSUED ON REQUEST)*

| To: | Justin H. Wilkes<br>1727 1/2 Webster Ave.<br>Silver Lake, CA 90026 | From: | Los Angeles District Office<br>255 E. Temple St. 4th Floor<br>Los Angeles, CA 90012 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 480-2021-02319 | Mark P. Brennan,<br>Investigator | (213) 785-3023 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Rosa M Viramontes
Digitally signed by Rosa M Viramontes
Date: 2021.05.12 08:28:09 -07'00'

May 12, 2021
*(Date Issued)*

Rosa M. Viramontes,
District Director

Enclosures(s)

cc: Jeff Olson
Head of Creator Partnerships
JELLYSMACK
777 S. Alameda Street
Los Angeles, CA 90021